We'll hear argument next in Case 21-1599, Polselli v. the Internal Revenue Service. Mr. Twarewski. Mr. Chief Justice, and may it please the Court, Congress enacted Section 7609 to give the public critical privacy rights to notice and an opportunity to quash third-party IRS summonses. Congress carefully limited the exceptions to those rights. In Clause 1, Congress allowed the IRS to forego notice for a summons issued, quote, in aid of the collection of an assessment against the person with respect to whose liability the summons is issued. In Clause 2, Congress separately dispensed with notice for summonses, quote, issued in aid of the collection of the liability of any transferee or fiduciary of a delinquent taxpayer with an assessment or judgment. But the Sixth Circuit, like the IRS, nullified most of what Congress wrote. It read Clause 1 to contain just nine words, a summons, quote, issued in aid of the collection of an assessment, period. The IRS says those nine words mean that any time it's made an assessment, there are no judicially reviewable limits on its power to issue secret, overbroad third-party summonses. So nothing stops the IRS from secretly a lawn care company, a friend splitting a dinner check through Venmo, or, as here, a law firm. Never mind Clause 2. Never mind the rest of the words in Clause 1. Never mind the different language Congress used in another exception for summonses issued in connection with a criminal investigation. The Sixth Circuit and IRS's interpretation is inconsistent with the statute's text, context and purpose, and it would create the same opportunity for abuse that Congress sought to eradicate. The question isn't whether the IRS can summons the records it needs, only whether it can do so secretly and without judicial oversight. The IRS says, trust us, we police ourselves. But Congress repudiated that approach when it enacted Section 7609's privacy protections for innocent third parties. I welcome the Court's questions. You said that the IRS is not reading the entirety of the clauses. Would you tell us exactly what you're relying on? We are relying on the broad notice rights in Section 7609A and B. And then, for purposes of the exception in Clause 1, we are relying on the fact that it has to be in aid of the collection of an assessment made with respect to a particular taxpayer. So the aid of the collection language has to be understood to require a direct connection between the summons and the act of collecting, which means getting the money into the federal fisc. Aid of collection has to be understood to mean a direct connection in light of a few considerations. One is the ordinary usage of that term. Two is the contrast between the language that Congress used there in aid of and the language that Congress used in C2E in connection with, which is broader, and relates to an F1, which this Court also has said has a broadening effect. This Court has interpreted similar language, such as in the electric power supply case, where it is affecting in order to put reasonable limits on seemingly broad terms. And lastly, we're relying on the fact that under our interpretation, there is separate meaning to Clause 1 and Clause 2, whereas the government's interpretation creates massive surplusage by rendering all of Clause 2 and much of Clause 1 meaningless within this statute. Congress was simply wasting its time in writing those provisions, which is what Judge Kethledge recognized in dissent below. The only problem, the problem is the limiting language that you're asking about isn't there. It says the issued in aid of the collection of an assessment made or judgment rendered against the person. So where's the rest of your limiting language? I think the question is what in aid of means, and I think the limiting language is inherent in an aid of. Let me try an example. In aid of isn't really an expression that I think people use in common speech, but let's try it anyway. You might say that I wrote this introduction in aid of presenting this argument today. You wouldn't say that I went to law school in aid of presenting this argument today. You wouldn't say that not only because I went to Yale Law School, but you also wouldn't say that because whatever I wrote in aid of I learned about advocacy in law school however many years ago, while perhaps helpful to me here today in some sense, just doesn't have a close enough relationship to what I'm doing here today to say that that is in aid of my presentation of this argument. So the concept, the very concept of an aid of in common parlance, to the extent it's used in common parlance, has a limiting principle. And that takes me, again, back to the electric power supply case. And in that case, this Court interpreted the language affecting in the Federal Power Act, what affects a wholesale power rate. And the Court said, look, lots of things could affect wholesale power rates. The labor market could affect wholesale power rates. That doesn't mean that FERC has the authority to regulate the labor market. The Court interpreted the language affecting to mean directly affecting. And in aid of here in this statute has to have that same sense. Why is that? I think it would be very ‑‑ I mean, what you learned in law school and here, there's obviously a lot happened between them. But here, it's in aid of collecting. I think getting a summons against your lawyer is a lot of help in collecting the assessment against you. Right? It helps, again, in the way that going to law school helped me here today. But the question is whether when Congress wrote this in aid of language, it meant to create an exception that as soon as the IRS makes an assessment, which is an internal bookkeeping notation, at that point, any summons that the IRS wants to issue against a third party, an innocent third party, like a law firm, at that point, there's no opportunity for notice and becomes completely unreviewable. No, no. I understand. Yes. I think your argument looks to confining the scope of an aid of collection. And there may be a lot of reasons to do that. But the nature of the phrase and the language doesn't seem to be, to me, very helpful. I think an aid of collection is exactly what you would say if you want to expand the reach of D little I as far as, you know, as far as the government is arguing for. Well, and of course that is what they want to say in order to expand the reach of D little I as far as possible. Our point is that the other indications in this statute show that Congress did not mean to create an exception that expands so far as to effectively swallow the rule. And in aid of is at least susceptible to the more limited interpretation that I'm advancing and that Judge Kethledge recognized in the Sixth Circuit. It's at least susceptible to that. And that's the better interpretation in this context because, again, of the significant surplusage concerns that reading the statute the government's way would create as for the rest of the exception in D that Congress wrote here. Under the government's reading, if a summons does not call for notice or the ability to quash, if it is an aid of collection, period, Congress didn't need to write clause 2 at all because collecting from a transferee or fiduciary is collecting the liability or the assessment, the underlying liability or assessment as to the taxpayer. So that, too, summonsing a fiduciary or a transferee would be an aid of collection of the underlying assessment under the government's reading of Clause 1. So Mr. Kavaretsky, I understand the surplusage matter is a technical point. But of course all the time Congress, you know, uses belt and suspender approaches. We really mean this. And even beyond that, I mean, I think actually if you think about the person who wrote this language and why they wrote this language, it's this language is written in recognition of the fact that there are sort of two sources of money that the IRS can try to collect from. You know, sometimes the IRS is collecting from an individual taxpayer, and sometimes the IRS is collecting from the taxpayer's fiduciary or transferee. And, you know, basically I read this language just to say whoever we're collecting from, and it could be this group of people or it could be that group of people, if it's an aid of collecting, then we don't have to issue a notice. There's no indication that Congress had that kind of framework in mind when it was writing this statute. Every indication is that what Congress was concerned with in writing this statute was responding to this Court's decisions in cases like Donaldson and protecting third party privacy rights. Well, I mean, there actually is an indication because all over the code, the code uses like this dichotomy between taxpayers and their fiduciaries and transferees. So that is in many provisions of the code. And essentially this just matches it. You know, you can collect from either one. There are two sources of, there are two pots that one can collect from. And this is reflective of that. Is it absolutely necessary? It's not, for exactly the reason you say, but it's totally understandable as a way of drafting. If you're thinking about Congress saying, after the liability judgment has been made, after an assessment is put on the books, do whatever you need to do to collect money from either the taxpayer or the beneficiary slash transferee, excuse me, the fiduciary. I think the only indication that the government has given that Congress might have been thinking that is in responding to a 1927 Western District of Kentucky case that seemed to exhibit some confusion about the difference between collecting directly from the taxpayer and collecting from a transferee or fiduciary. I just think the much more plausible inference in this context when we have all the nature of this statute and all over the legislative history for those who care to look at it as a concern about privacy rights, that that was the overarching concern that Congress had here. And from that perspective, Congress wrote a carefully crafted exception that, under the government's view, could have just been limited to collection in, any summons in aid of collection, period, doesn't trigger the privacy protections. And that's not what Congress wrote here. Do you concede that the law firms at issue here were some sort of fiduciary or transferee? No. And the government's not relying on the question. They're not relying on that. So I guess I'm asking a factual question about the summons, which is, it appeared to want all of the financial records of these law firms. Is it limited to the records of the law firms related to Mr. Polselli? No. So the law firms weren't themselves fiduciaries, or at least the government's not relying on that, and the records they're seeking are not the ones just related to Mr. Polselli. So how, under that operation of the statute, could somebody challenge it as overbroad? Well, under our reading of the statute, the law firms were entitled to notice and an opportunity to quash. Right. And under the government's, they wouldn't be, because these records would, through their theory of in aid of, would be in aid of collection. And so there wouldn't really be an opportunity for anybody to complain about the scope of this subpoena, under the government's theory. Under the government's theory, that's right. Okay. Sorry. Whereas under our theory, that is, whatever the government's interest might be in getting any records from the law firm, particularly pertaining to the delinquent taxpayer, they surely have no interest in getting all of the unredacted bank records from the law firm over a two-year period. What is your, I understood their argument to be, well, it's in aid of because there aren't in the two years of financial records of the law firm as to some way in which Mr. Posselli paid, or we're looking for where his assets are, and so we want two years of the bank records of the law firm about anybody so that we can find Posselli's information. What's your response to that? Two points in response to that. One, that is precisely the sort of egregious invasion of privacy of the law firm's interests, as well as the law firm's other clients' interests that Congress was concerned with, and Congress didn't write this exception in aid of collection in order to blow up the privacy protections that were put in place in 7609A and B. With respect to the actual utility of such information, in an attenuated way, perhaps that phishing expedition would be helpful. In an attenuated way, going to law school is helpful to me here today. In an attenuated way, taping up a basketball player's ankle before she goes on the court to score a basket is helpful. None of that is directly in aid of arguing this case, scoring a basket, or collecting. Is it helpful in some attenuated way? Sure. And for that reason, perhaps they could get that narrow information if they could. In this case, you can see an example of one at Petition Appendix 71A, if that had been subject to district court review, and the district court might well have had the reaction, look, maybe, IRS, you can get some of this information, but what you've asked for is way overbroad, so let's narrow it. In addition to all of that, from an ex-ante point of view, just thinking about what rule makes sense here, under the IRS's view, as soon as they make an assessment, again, an internal bookkeeping notation, as soon as they do that, that turns off the notice and judicial review provisions that Congress created in 7609A and B. That gives them no incentive to be reasonable, and it leads them to issue overbroad summonses like the ones that you can see in the Petition Appendix at 71A. In a universe like the one that Congress actually designed, where before Congress can get information from innocent third parties, it actually has to think, what do we really need here, because it's going to be subject to judicial review, probably they wouldn't have issued such an overbroad summons in the first place. MS. MCBRIDE Mr. Braske, I think you are obviously helped by the canon against surplusage. Do you want to address the government's argument that we also have to account for waivers of immunity should be narrowly construed? I mean, how do we pick between them? If we accept that there's some ambiguity that justifies resort to a canon in the first place, how do we choose between those? MR. BRASKE So I think this Court, in applying the – in considering sovereign immunity cases, this Court has not construed exceptions to sovereign – to exceptions to waivers broadly. It has construed them narrowly. So in the Federal Claims Act context, for example, you have a broad waiver of sovereign immunity, just as here in 7609a and b, you have a very broad waiver of sovereign immunity referring to any person, referring to any summons. Once you have that kind of a broad waiver of immunity, courts are not going to claw that back by broadly construing exceptions. At that point, you construe exceptions narrowly. That's the Yellow Cab case, and that's the cases interpreting the Federal Claims Act. So that would be the framework for thinking about this here. The government, I think, doesn't really have any – the government doesn't have any good textual arguments for avoiding the surplusage problem that's been – that is created by their reading of the statute. They make a couple of arguments about Clause 2 here. One is that Clause 2 applies only pre – that Clause 2 applies preassessment, whereas Clause 1 does not. That doesn't make any sense as a practical matter to think that what Congress was doing here was giving greater protections to delinquent taxpayers preassessment than to fiduciaries and transferees. It also doesn't work as a textual matter. Clause 2 refers back to the taxpayer in Clause 1, and that's the taxpayer who has had an assessment made against them. The other argument they make is that Clause 2 applies where you can't collect directly from the taxpayer, such as in a situation where a corporation has liquidated. But even in those situations, you are still collecting on account of the underlying liability and assessment. And so Clause 2 just creates – this is not a minor belt and suspenders problem. It's creating massive surplusage problems that – that, again, gave Judge Keflage pause below and ought to give this Court significant pause here. Justice Thomas? Justice Alito? Gorsuch? Kavanaugh? Justice Barrett? Justice Jackson? Okay. Thank you, counsel. Mr. McDonald? Thank you, Mr. Chief Justice, and may it please the Court. The statute in this case requires that notice and judicial review be given to persons identified in a third-party summons issued in aid of a liability investigation. But Congress made an express exception to those entitlements for summonses issued in aid of collection of an assessment made against a delinquent taxpayer. We would read that collection exception by its terms. And because the summonses here were issued in aid of collection of a $2 million assessment against Mr. Polselli, the collection exception applies in this case. Petitioners, however, would disturb the balance that Congress struck by inserting two artificial limitations into the statute, namely a direct connection requirement that supposedly leads into a legal interest test. But nothing in the statutory text, context, or history even hints at those limitations. And those limitations lack any established legal meaning, so their boundaries are amorphous. Petitioners say their limitations are necessary to impose a check on the IRS's summons authority, but multiple other checks exist, including the prospect of a challenge by the recipient of a third-party summons. Ultimately, petitioners' position is that the statute is an unqualified pro-privacy guarantee. But in fact, like many statutes, this one is a compromise. While Congress prioritized privacy rights at the liability investigation phase, it prioritized prompt and efficient collection of taxes at the collection phase. And it did so because when we're at the collection phase, that necessarily means that there's a delinquent taxpayer who's context, Congress wanted the IRS to have some latitude to seek out and recover the delinquent taxpayer's assets. I welcome the Court's questions. Well, Mr. McDowell, this is quite a broad statute. I was interested in the way this is initiated is through an assessment. And I was interested in how you established an assessment process. And you cite us in your brief on page 17 to Lange v. U.S., footnote number 13, which has some issues with circularity because it says the assessment essentially a bookkeeping notation is made when the secretary or his delegate establishes an account against the taxpayer on the tax rolls. And in other words, that boils down to it is when there's an assessment, when the secretary says there is an assessment. So the, what would limit what you can do after you establish an assessment and then begin a collection process? Sure. So the first point I would make is that they, they're basically saying that an assessment is a bookkeeping notation, but it's important to understand that the assessment comes after a very long process in which the taxpayer has gotten the opportunity to get tax court review of the liability determination and then seek court of appeals review of the liability determination. So there's a whole liability process. Only after that would there be an assessment. At that point, this statute kicks in, Clause 1 kicks in, and we are limited by the phrase in aid of collection. I mean, that's fairly broad general language, but if it's not in aid of collection, then that would be the limit. So tell me how that limits you. Sure. So I think in practice, the types of heartland summonses that were, that we provide, that we issue are the ones like those in this case, which is records, seeking records of financial transactions between a third party and the delinquent taxpayer or records of third parties who have intertwined assets with the delinquent taxpayer. So if beyond that, if we're not seeking the, if we're not seeking information about the delinquent taxpayer's assets, I think that's not going to be in aid of collection. But that doesn't seem to be so much. If you can say we're seeking records about the delinquent taxpayer's records, we're seeking information about that, why can't you also then summons, issue summons to clients of the law firm, to other partners of the law firm, associates in the law firm who may have had some connection to this client or to this taxpayer? Right. So it does, I mean, in aid of collection is not limitless. We know this is an exception to a general rule in the statute. So we're not saying it's limitless. It has to be, it has to assist the service in moving the ball forward towards collecting the assets. And  Well, but you don't know if another partner or another client of the firm also participated in an activity to hide or secret the funds. Right. So that gets to the question of what is the level of knowledge we need before we can issue the summons. And I think I take petitioners to be saying we have to have pretty strong level of certainty before we issue the summons. We don't think that's correct. We also don't think it can be a shot in the dark because then the exception swallows the default. So where would you get the limiting language? So we would say that the limiting language is something like it has to be reasonably calculated to assisting in collection. And we get that from the Rule 69 context, which is Federal Rule of Civil Procedure 69, which uses the very similar language of in aid of the judgment and also deals with a similar problem where you have a judgment creditor who's seeking to satisfy a judgment by looking for the judgment debtor's assets. So let me tell me. I'm sorry, Chief. Tell me exactly how how you read this notice section different differently from this. It really says you get no notice if we want documents that might be relevant to how much you have and how much you owe us. That's all this says. Once there is an assessment at the very end of a long assessment is OK, we think I think you owe me one hundred thousand dollars. Mr. Chief Justice, I respectfully disagree. I think an assessment comes at the end of a very long process where there's been a liability determination. They've issued liability investigation summonses, which the person has gotten notice in judicial OK. They think you owe a particular amount of money after they do some work and look at it. Well, there's tax. But I mean, the question is notice. I mean, they're not going to give you notice. We're looking at you. The notice is no notice. That's that is once the collection phase kicks in, this provision does apply. And there's a good reason for that, because when we're at the collection phase, that necessarily means that the delinquent taxpayer has gotten this full process. I'm sure there's a good reason for it. It helps you collect the money that you think the person owes. But in terms of notice that anybody can do anything about, I just don't see where where it is. Sure. So he doesn't get notice. People who might help figure out how much he owes don't get notice. Nobody else matters. So two points about that, Mr. Chief Justice. First, the recipient of the summons can always challenge the summons. So here the banks could have challenged it. That's pursuant to Section 7604 of the statute. And the recipient of the summons will generally have an incentive to do that. If you're talking about a bank, if the summons is particularly sweeping into other customers' rights, that's when they're going to have the incentive to bring that sort of challenge. The second point is Congress made the deliberate decision. But what exactly would their challenge consist of? It would consist of the general motion to quash challenge that would exist, which is overbreadth, relevance, scope, things like that. So they could say that this is actually not sufficiently tailored or sufficiently relevant to the collection case. So that's number one. Number two, Congress made a deliberate decision in the statute not to restrict banks and other third party record keepers from providing notice to their customers about these summonses. That's why we have petitioners. But that's why this case arose, because the banks told petitioners about the notice. So the idea that this is all happening. But you say they can't go in on that basis. Right. So what difference does it make if the banks notify the people whose records are being collected? I thought your point was they are not entitled to notice under the statute and therefore they can't bring a challenge. That's correct. As far as bringing a motion to quash, what I'm saying is I think that it cuts against petitioners argument that this is all shrouded in secrecy. If the banks are able to give notice and Congress made a deliberate decision to do this because in other statutes, Congress has allowed has has allowed the government to seek nondisclosure orders against banks and other third party record keepers. But it made a deliberate decision not to do that here because I think it wanted this process to be relevant. It wanted to give banks the option of keeping this. If I understand your colloquy with the chief justice and Justice Thomas, you do accept that in aid of can't mean a shot in the dark. Yes. Right. Yes. There has to be some causal link, some close connection of some kind between the IRS's actions. I wouldn't say request request for information in the IRS's actions. I would not say close connection, some connection, some connection. And so that's so what we're really fighting about. Everyone agrees in aid of can't mean the universe. Yes. And it's just how how closely connected it has to be. That's what the debate is really about. I don't disagree with that. And I would say two things about why we think that the limits should be broader than Sure. But we don't disagree on principle that it has to have some limiting some limit to it. We're just disagreeing over. I just want to clarify the nature of our dispute is how close that causal connection has to be. It doesn't matter whether your co-counsel went to Yale or doesn't matter what he did last night. You know, somewhere in between is what we're fighting about. I do agree with that. We don't think in aid of can be limitless. This is an exception to a default rule. And also we think. And do you think that informs our analysis that the default rule is notice. And so that when we're construing an exception to that, we should do so reasonably in light of the general rule. Reasonably, but not narrowly. I mean, you're reasonable. And I agree with that. Yes. OK. Reasonably, fairly. Yes. OK. And and I guess the two things I was going to say about about the phrase in aid of and why we think the limits should be broader than they suggest are number one, I think in aid of is fairly broad general language. I don't think I read that as a narrow and a narrowing phrase like petitioners do. I don't think that's how it's naturally understood. Do you think the government could have done what Justice Thomas posited? And that is say, well, you know, this law firm has lots of clients, some of whom might have come into contact with the petitioner here and might be aware of his assets. And so we want information about all of their transactions, too. I based on those facts alone, I don't think so. Isn't that what you did here, though? Because you sought two years worth of records from the firm without regard to its clients. I mean, with no sensitivity to the attorney client privilege of those clients or or their their interests. So I'd like to clarify that, because on page 21a, this is the Court of Appeals opinion. The Court of Appeals said that the limitation in this summons is borne out, that the summonses the IRS issued to the banks in this case all specify that they seek information concerning the person identified in the summons. So the way that we read the summonses and the way that the Court of Appeals read them is that they were asking for information from the bank about the law firm's bank statements. And it could have other stuff could have been redacted. OK, so so you so there is a limit to in aid of in your mind right there. You don't think the government could seek other information about other clients or do you know? Well, the way we would talk about the limit is the limit. The point here is to locate the delinquent taxpayers assets. I understand. So the third party should have some financial ties or has engaged in financial transactions with the delinquent taxpayer. Otherwise, the point is not to locate the delinquent taxpayers assets. So that's how we would articulate it. Well, John may know Susie, who may know Joe, who may know Mr. Pulselli. But you'd say that at some level that becomes too attenuated at some level. But here the summonses were quite close in connection. Would you say a word more about that? How is it that the summonses were close in connection? Sure. So for the law firm summons, because I think that's the real delta in some ways between our position, the summons seeking the law firm's bank records. Mr. Pulselli was a longtime client of this law firm. He made numerous payments to the law firm over time. So by seeing the law firm's records of his payments, they could figure out what accounts or what entities Mr. Pulselli was using to make those payments. And then they could begin the collection process by seizing funds from those accounts or one step removed from the actual collection. I mean, direct connection is just kind of a phrase that they're using, but it doesn't really have any content. I think the idea here is that this actually was fairly there is a fairly close nexus because they were looking for this account information and they could have begun the process of issuing a notice of levy from those accounts. And could I ask you, there's been some talk about, oh, it's the IRS. They just think that he owes money. But what is the process before the IRS decides he owes money? Sure. So there's initially an information gathering process where there could be audits and examinations. That's a long process. Any summonses issued to third parties during that process would be subject to notice in judicial review under subsections A and B. Then once that process concludes, the IRS will make a liability determination, meaning this person is liable for some amount of taxes owed. That liability determination is challengeable in the tax court. And then the tax court decision is reviewable in the court of appeals. So this is a thorough process with lots of layers of review. And then I'd also add that if we issue a collection summons and that collection summons. So at this point, we can say if we're going to be trusting courts at all, he owes money. Exactly. And I think that's a critical point because the only time we're in this situation when this provision comes into play is when there is someone who has adjudicated or assessed liability and he's refusing to pay that liability and likely deliberately evading tax collection. Did I understand you to respond to Justice Gorsuch that it is a limitation on this that the information has to concern assets? It has, I think, relate to or concern assets of the delinquent taxpayer. And how broadly do you read that? Well, I think, you know, so just to get it, it's more than just I want to see how much money you have in the bank. Right. I mean, it's could you get records of family members because maybe he's put his assets with them. So we don't think standing alone, the fact that someone is a family member is enough to simply summon that family member's bank records. There would have to be some further evidence that there was some financial dealing between the family member and the taxpayer. And here we had that with Mrs. Pulselli. It wasn't simply that this was a husband and a wife. Mrs. Pulselli and Mr. Pulselli had engaged in significant financial dealings. They owned and managed several of the same LLCs. And one of Mr. Pulselli's LLCs paid off a mortgage for Mrs. Pulselli. So you don't generally, if you're trying to seek the assets of the wife, you don't normally get records concerning the husband? We only if there's some reason to believe that there's a financial connection. Like they're married? Well, the marriage in and of itself may not be enough. There are some, I mean, it depends if their assets are intertwined. I think normally in a communal property state, yes, that probably would be okay. I think stretching out to brothers, sisters, other family members. Well, don't you normally assume that the financial records of a husband and wife are intertwined? You would, I think that could be an assumption depending on the state property law, I guess, but there would have to be, in our view, this is a particularly clear case, I guess, because it wasn't just that they were married, it's that there was this other evidence of extensive financial dealings, which is how the IRS officer put the point. Can I focus us on the case here? There's a whole lot about the IRS collection mechanism that has been criticized and continues to be criticized by the world, including me. If you've audited it, you know. Okay. But my point is, what I want to figure out is why Congress would want to distinguish between investigation and collection that involves third parties. I can understand why, and this is where I've been struggling with understanding the Ninth Circuit and Judge Ketledge is concerned, okay? And I think in this conversation, I'm finally coming to understand it, which is that I think what they're concerned about is if you're collecting from the taxpayer, then you could understand not giving the taxpayer notice because you might have suspicions that they'll continue and not wanting to pay you and to hide the assets. But if it's an innocent third party, why would you impose secrecy on them? Unless the taxpayer is handed it over to a fiduciary or you have information that it is an alter ego or a partner or something else, why shouldn't an innocent taxpayer get notice? Why shouldn't the law firm? Be able to come in and challenge the broadness of a subpoena to a bank on attorney-client privilege. Why shouldn't the innocent third party say, you know, they got it wrong. I'm not involved with this taxpayer. Because the necessary implication of their position is not only that the third party would be entitled to notice, but also that the taxpayer himself would have to be entitled to notice because their argument is that no, that's the exception built in by judge Kettleidge and the ninth circuit. Well, they said if it's the taxpayer or, um, or you have, you have knowledge or suspicion of a reasonably basis for believing they're covered by the exception. Well, so, so what I'm saying is let's take the example of the, the summons seeking the law firm's bank records. If we had to provide notice and the opportunity for judicial review to, in that situation, the law firm would not only get the notice, but also Mr. Polselli. And that's because their entire argument is that subsection C2D's exception doesn't apply in that case, right? So if that's true, then subsection A and B have to apply because those are the general rules. And subsection A says any person who is identified in the summons is entitled to notice. And Mr. Polselli was identified in these summonses and the taxpayer will always be identified in these summonses in the caption. So the necessary implication is that he will also be entitled to notice. And with that notice, he'll be able to move his funds from whatever accounts and entities he was using to pay the law firm into other funds and other accounts. I didn't hear them as suggesting that the entirety of that, the subsection didn't apply in the law firm situation. So I'm a little curious about the argument that you just made. I mean, you're suggesting that if we go with them, it automatically means that the taxpayer himself would always get the notice. And I just thought they were saying it's, it's not an aid of collection if you're giving the summons to a law firm and seeking all of the law firm's records for two years. Well, first of all, we disagree with the scope of that summons, but the characterization of that scope of that summons, as I mentioned. Just, just because you read it that way, but I'm, you know, looking at the language of the summons, it does, it doesn't say anything about, it says copies of all bank statements relative to the accounts of the law firm. Well, but, but if you go up on, and I'll, if you go up to the earlier paragraph on this, I'm looking at 79A of the petition appendix, it says it's talking about concerning the person identified above for the period shown. So they're asking for it as they relate to the person identified above. And that's Mr. Posselli. But. So what's your position on all the law firm records? That's, that you would, you would agree that's not in. Well, we don't think that's what the summons saw. Hypothetically. So I think. You asked for all the law firm records because, for example, Mr. Posselli could be using aliases or whatever, and you wanted to see, you knew, as you said, that he had a longstanding relationship with this law firm and you didn't have the exact account numbers and you were afraid he had aliases. So you said, I'd like to get all the law firm records for the bank. Is that. I think. For, for, from, from the bank related to the law firm. Is that in or out? I think in an ordinary case that would be out, but I think this could be a different type of case if you think about the facts here, which were, they first asked the law firm for the records of Mr. Posselli's payments to the law firm. They asked the law firm directly, not the bank. The law firm said, we don't have any such records, even though they knew that Mr. Posselli was a longtime client of the law firm. Only at that point, when they didn't have cooperation of the law firm, did they ask for the bank statement. So if you did read it more broadly, I think the rationale for that more broad, that broader reading would be that they would have to have all of the relevant bank statements in order to figure out what the shell companies he was using were, because the bank itself wouldn't know what those shell companies were. So they may need a slightly broader, a slightly broader set of information than just the information that says line item payment from Mr. Posselli. They may need more information that actually concerns the shell companies. So I think that would be the potential rationale. But again, I don't think you need to get into that because the Court of Appeals read it the way we read it, and I think that's the fairest reading of the summons. But to get to your statutory question, they're saying that this is not in aid of collection. If it's not in aid of collection, then we're outside of C2D, because C2D is the exception that's talking about summons as in aid of collection. And if we're outside of C2D, we're in A and B, which are the general rules that require notice and judicial review. And if you look at A1, section, subsection A1, it says any person who is identified in the summons is entitled to notice. So Mr. Posselli would be entitled to notice, but even if he weren't for whatever reason, which I don't know why that would be, the law firm could still tell him about the summons and he could then move his assets. What do we do with your friend's argument on the other side that the government's reading of the statute renders subsection 2, if not entirely superfluous almost so, as well as about half of D1? So the way I think about the superfluity issue, I think as a threshold matter is exactly the way that Justice Kagan was. I understand that response. You know, sometimes iteration is part of the statutory construction. Putting that aside. It was a little bit more than that. Yeah, exactly. What? Exactly. I think it actually is different than that. I think it's actually different than the traditional belt and suspenders. Okay. And the reason is that if you look at, this is a structural point about the entire tax code. There are two avenues of collection within the tax code. There's collection from the delinquent taxpayer directly and collection from transferees or producers. You see that in the Anti-Injunction Act and in section 6901 of the code. Okay. So in this provision, that's all about collection. It makes perfect sense that Congress would just reference both avenues of collection that exists in the entire tax code. So I think that's a different, that's different than just belt and suspenders. Is that though, it may be a reason for D2 being superfluous, but is there any response from the government that D2 is in fact superfluous? Yes. Yes. We have those responses. They're at pages 25 to 31 of our brief. The one that I'd like to focus on is that, is that Clause 2 can apply pre-assessment whereas Clause 1 applies only post-assessment. Because if you look at the language of Clause 1, Clause 1 is clearly requiring that an assessment has been made or judgment rendered, but Clause 2 just talks about the liability at law or inequity of a transferee or fiduciary. And as we explained in our brief, liability is distinct from an assessment. And so what we, we read that difference in language to mean that Clause 2 can apply pre-assessment, whereas Clause 1 can only apply post-assessment. And that's a distinction in scope that would mean that Clause 2 is doing work. Except don't you have a regulation that says you won't engage to until there is collection? It's not a, it's not a regulation. It's an internal revenue manual, which is just a, basically a best practices guide for line agents who are not lawyers. And it's not meant to say what the statute means or to say what the precise scope of certain statutory language. It's just saying as a matter of best practice, we will wait till after an assessment to issue a Clause 2 summons. And I think the reason for that is because I think line agents might be confused in on the ground if there was a distinction between pre and post assessment under Clause 1 and Clause 2. And I guess just getting to their, I mean, their, their principle. Thank you, counsel. Yeah. Their principle point in their briefing was the legal interest test, but I actually didn't hear anything about that legal interest test from them today. I mean, the legal interest test is adding words to the statute. And we know that when Congress wanted to create a limitation based on the taxpayer's interest in certain records, it did so expressly. It did that in the very next section of the code, Section 7610. The other, I guess the other, the other point I would just make is that I think the statutory history, which my friend pointed to, actually reinforces our reading of the text because Congress passed this provision in response to this court's decision in Donaldson. But Donaldson simply involved liability investigation summonses. And it said that a taxpayer who is the subject of a liability investigation summons was not generally entitled to judicial review of that summons. Congress wanted to overturn that result as to liability investigation summonses, but it did not want to disturb the IRS's ability to promptly and efficiently collect taxes at the collection phase. And that's clear from the text of the statute because subsections A and B are all about liability investigation summonses and they provide notice and judicial review there. But then C2D, the provision we're dealing with here, is carving out an express exception to those requirements for collection phase summonses. And then the House and Senate reports also both say that they're covering out an expressly say that they're carving out an exception for summonses issued in aid of collection. And if I could just take a step back and put this in perspective a little bit, and this, I think, goes to the colloquy I had with the Chief Justice, the IRS has long faced a persistent problem of tax collection evasion. They have what's called a net tax gap report, and that estimated that between 2014 and 2016 per year there were $428 billion in uncollected taxes each of those years. And that's available, this is data on the website of the IRS. So we're dealing with a very difficult problem, and I think Congress was acting against that backdrop by giving the service fairly broad latitude to issue summonses seeking the assets of people who, again, have adjudicated or assessed liabilities and are refusing to pay those liabilities and likely deliberately evading the collection process. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Sotomayor? Justice Kagan? Justice Kavanaugh? Justice Barrett? Justice Jackson? Thank you, Counsel. Rebuttal? Mr. Dworetsky? Thank you, Mr. Chief Justice. Just a few points to wrap up. So first, I think everybody is agreeing here today that an aid of collection is not limitless, that it can't just be a shot in the dark. The Sixth Circuit's rule seemed to think that it was, in fact, limitless. Petition Appendix 11A and the Kethledge dissent at 27A both adopt the understanding that the IRS gets to decide what is helpful to it, and that could stretch as far as the IRS wants it to stretch. Second point, as a practical matter, I think banks will often provide notice to their customers. In this case, if you look in the district court record, there are copies of form letters that the bank sent to the law firms. That's how the law firms found out about these summonses. It seems to be a common occurrence that banks do that. And so taking those two points together, it seems like the real issue here is, is there going to be judicial review of the IRS's determination that a particular summons is sufficiently helpful or not? Again, the banks, as a practical matter, are going to give notice to the third parties. Going back to the question that Justice Jackson asked me earlier, and Mr. McDowell tried to narrow the summons here to only information concerning Remo Pulselli, the problem with that is the banks, looking at the law firm's bank records, don't know what line items in there might concern Mr. Pulselli. The IRS's whole theory is that they're looking for potential additional shell entities that Mr. Pulselli might have used in order to pay the law firms. How are the banks supposed to know that? The only way to make that determination and actually get the IRS what it needs is to bring the law firms into the picture. And the mechanism for bringing them into the picture is providing them the official notice that the statute requires and allowing them, if necessary, to move to quash the summons. As far as the standard that the IRS has to meet, we're not asking the IRS to be certain of the direct connection. The IRS just has to have a reasonable basis that the information that it's seeking is going to lead directly to collection. And again, there ought to be judicial review of that. And lastly, as to the legal interest test, the legal interest test is just an application of the direct connection test in the context of a bank account. In the context of a bank account, what it means to have a direct connection to collection is that the IRS can take the information that it learns from the summons and then levy on a bank account belonging to the petitioner or through an alter ego theory in order to collect money into the federal fisc. So the legal interest test is simply an application of the direct connection test. And the direct connection test is a way of understanding the in-aid-of language, which I think everybody agrees here today, is not limitless as the Sixth Circuit thought that it was. I respectfully submit that that determination ought to be made by a court rather than by the IRS operating on its own. And so we ask that the Sixth Circuit's decision be reversed. Thank you, counsel. The case is submitted.